Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TP ICAP AMERICAS HOLDINGS INC, <br><br> Plaintiff, <br><br> v. <br><br> ICAP ENTERPRISES, INC., HAFEN, LLC, and BITGO, INC., <br><br> Defendants. | C21-539 TSZ <br><br> AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.     General Principles**

1.     An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.     As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION- PAGE - 1
(C21-539 TSZ)

application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

3. The parties hereby agree that this agreement and order shall control the search, identification, and production of ESI in the form of email, email attachments, and to the extent a party makes substantial use of a real-time chat system, such as a chat-based computer workspace, communication platform, or computer application for employee collaboration that records written communications or messages in the operation of their business, real-time chat messages and associated files, only and that neither party shall be required to use the protocol and procedures set forth herein in identifying other documents or files for production in discovery.

**B.     ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1. <u>Custodians</u>. The two custodians most likely to have discoverable email or chat messages ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2. <u>Non-custodial Data Sources</u>. A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

**C.     ESI Discovery Procedures**

1. <u>On-site inspection of electronic media</u>. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.    <u>Search methodology</u>. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

    a.    Prior to running searches:

        i.    The producing party shall disclose the data sources (including custodians), search terms and queries, any date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query.

        ii.    The requesting party is entitled to, within 14 days of the producing party's disclosure, add no more than 5 search terms or queries to those disclosed by the producing party absent a showing of good cause or agreement of the parties.

        iii.    The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query. If a Party believes a search returns an

overbroad or burdensome number of hits, the Parties will meet and confer in good faith to discuss how to refine the search so as to not be overbroad or burdensome.

  b. After production: Within 21 days of the producing party notifying the receiving party that it has substantially completed the production of documents responsive to a request, the requesting party may request no more than 10 additional search terms or queries. The immediately preceding section (Section C(2)(a)(iii)) applies.

 3. <u>Format</u>.

  a. ESI will be produced to the requesting party with single-page TIFFs with 1) a data load file (.dat) for e-discovery software that includes the metadata fields listed in Section 9 and identifies natural document breaks; 2) an image load file (.opt) linking each page in the production to a single document record; 3) the full extracted text of each electronic document or OCR text for scanned hard-copy documents, provided at the document level. Parties may by mutual agreement produce documents in alternative format, such as searchable PDF.

  b. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, video, audio, and drawing files, will be produced in native format, with a TIFF placeholder reading "Document Produced Natively".

  c. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

  d. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION- PAGE - 4
(C21-539 TSZ)

4.      De-duplication. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.

5.      Email Threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies.  Upon reasonable request, the producing party will produce a less inclusive copy.

6.      Parent-Child Document Relationships. The parties agree to produce complete document families (i.e. an email and its attachments) in the same production set, with the parent-child relationship captured in the production bates attach begin and production bates attach end fields in the database load file. Full document families will be produced even if a single part of the family, taken out of the family context, may be non-responsive. Parties may withhold privileged documents from otherwise responsive document families by producing a single-page Bates-stamped TIFF image placeholder stating the document has been withheld for privilege.

7.      Time Zone. The parties agree that the entirety of each party's ESI should be processed using a single zone, identified as a fielded value in the production database load file.

8.      Redactions. The parties agree that documents redacted for privilege or other good reason will be produced without native files, full text and/or OCR, and metadata values including but not limited to email subject, original file path, and file name.  The redaction language should clearly indicate the basis for the redaction [Redacted, Redacted-Privileged, Redacted-PII, etc.] and the REDACTED field in the production load file field should be populated to indicate the document contains a redaction.

9. <u>Metadata fields</u>. If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and duplicate custodians; author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size; file extension; original file path; date and time created, sent, modified and/or received; time zone; redacted; confidentiality; and hash value. The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

10. <u>Hard-Copy Documents</u>. If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D.     Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION- PAGE - 6
(C21-539 TSZ)

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    a. Deleted, slack, fragmented, or other data only accessible by forensics.

    b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

    d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

    e. Back-up data that are duplicative of data that are more accessible elsewhere.

    f. Server, system or network logs.

    g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

    h. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

    i. Text messages, chat messages (except for messages via a real-time chat system as set forth in A.3 herein), and social media posts.

E.  **Third Party Documents**

1. A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena request that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any documents obtained pursuant to a non-party subpoena to the opposing party. If the non-Party production is not Bates-stamped, the Issuing Party will brand the non-Party production images with unique prefixes and Bates numbers prior to producing them to the opposing Party per the technical specifications outlined in this Stipulation.

2. Nothing in this Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or Third Parties to object to a subpoena.

F.  **Privilege**

1. A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 30 days after completing a production unless an earlier deadline is agreed to by the parties.

2. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION- PAGE - 8
(C21-539 TSZ)

3. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5. Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.  Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party or destroyed, and its production shall not constitute a waiver of such protection.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD.

By: s/ *Brian W. Esler*
Brian W. Esler, WSB No. 22168
Miller Nash LLP
Pier 70
2801 Alaskan Way, Suite 300
Seattle, WA 98121
Telephone: (206) 624-8300
Fax: (206) 340-9599
Email: brian.esler@millernash.com

Jeanne M. Hamburg
(Admitted *Pro Hac Vice*)
David H. Siegel
(Admitted *Pro Hac Vice*)
Norris McLaughlin, P.A.
7 Times Square, 21st Floor
New York, NY 10036
(212) 808-0700

Attorneys for Plaintiff
TP ICAP Americas Holdings Inc.

By: s/ *William C. Rava*
William C. Rava, WSB No. 29948
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
206-359-8000
Email: WRava@perkinscoie.com

Sabrina J. Danielson
Perkins Coie LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
303-291-2300
Email: SDanielson@perkinscoie.com

Attorneys for Defendant
iCap Enterprises, Inc.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION- PAGE - 9
(C21-539 TSZ)

By: s/ *Doug Tilley*
Benjamin L. Singer
415-500-6077
Doug Tilley
Singer Cashman LLP
628-400-3961
505 Montgomery Street, Suite 1150
San Francisco, CA 94111
Email: bsinger@singercashman.com
Email: dtilley@singercashman.com

Michael G. Atkins, WSBA #26026
Atkins Intellectual Property, PLLC
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983
Email: mike@atkinsip.com

    Attorneys for Defendant
    Hafen, LLC

## ORDER

Based on the foregoing, IT IS SO ORDERED.

DATED: October 6, 2021

                                    */s/ Thomas S. Zilly*
                              The Honorable Thomas S. Zilly
                              UNITED STATES DISTRICT JUDGE

4851-9819-8013.1