UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TP ICAP AMERICAS HOLDINGS, INC.,

　　　　　　　Plaintiff,

　　v.

ICAP ENTERPRISES, INC.; HAFEN, LLC; and BITGO, INC.,

　　　　　　　Defendants.

C21-539 TSZ

ORDER

THIS MATTER comes before the Court on a Motion to Dismiss, docket no. 69, filed by Defendant BitGo Inc. ("BitGo") and a Motion for Leave to File Supplemental Evidence, docket no. 83, brought by Plaintiff TP ICAP Americas Holdings, Inc. ("TPI"). Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following Order.

**Background**

TPI, a Delaware corporation, is the American subsidiary of TP ICAP Group plc, "the world's largest inter-dealer broker and a provider of broking, execution, liquidity, and information services across many sectors and asset classes in the financial industry."

ORDER - 1

Second Am. Compl. ("SAC") at ¶¶ 4 & 15 (docket no. 45). TPI registered the "ICAP Mark"[1] in 2004. Id. at ¶ 23. TPI uses the ICAP Mark to offer comprehensive trading, brokerage, and information services to the financial industry in connection with voice and electronic trading platforms. Id. at ¶ 16.

According to TPI, Defendant iCAP Enterprises, Inc. ("Defendant iCAP"), a Washington corporation, described itself as an investment capital fund and launched approximately ten funds that incorporated the ICAP Mark in 2012. Id. at ¶¶ 36–37. TPI asserts that, in early 2019, Defendant iCAP "began to explore expanding its real estate investment products to include blockchain, token, and/or cryptocurrency offerings." Id. at ¶ 51. TPI alleges that Defendant iCAP entered into a contract in 2019 (the "Software Services Agreement") with Harbor Platform, Inc. ("Harbor Platform") in which Harbor Platform would set up blockchain trading of tokens representing Defendant iCAP's investment funds and build a trading platform for investors and broker-dealers to use those tokens. Id. at ¶ 53. According to TPI, in the fourth quarter of 2019, Defendant iCAP and Harbor Platform launched an online trading platform and portal (the "Electronic Trading Platform") for investors and broker-dealers to electronically buy, sell, and trade tokenized interests in Defendant iCAP's investment funds and products. Id. at ¶ 55. TPI contends that Defendant iCAP uses the ICAP Mark in connection with the Electronic Trading Platform. Id. at ¶ 58.

---

[1] In its SAC, TPI asserts that the use of either of the terms "iCAP" or "ICAP" infringes on its trademark. SAC at ¶ 3. For simplicity, the Court uses the term "ICAP Mark" to refer to both the "iCAP" and "ICAP" terms.

ORDER - 2

On February 18, 2020, Harbor Platform and its subsidiary, Harbor Technologies, LLC ("Harbor Tech") executed a "Contribution Agreement" in which Harbor Platform contributed to Harbor Tech the Software Services Agreement. Ex. 4 to Siegel Decl. (docket no. 79-4 at 2 & 10). That same day, Harbor Platform and BitGo, a Delaware corporation, entered into an "Acquisition Agreement" through which BitGo acquired the limited liability company interests of Harbor Tech and two other companies. Ex. B to Kita Decl. (docket no. 87 at 29).

Also on February 18, 2020, and in connection with the Acquisition Agreement, Harbor Platform and BitGo entered into a "Transition Services Agreement."[2] Ex. C to Kita Decl. (docket no. 87 at 116). Under the Transition Services Agreement, Harbor Platform would provide certain services on a transitional basis to ensure an orderly transfer of Harbor Tech and the other companies to BitGo. Id. Harbor Platform was to provide these services until the earlier of either the completion of the services or 180 days from the closing date. Id. at 118; Ex. B to Kita Decl. at 30–31 (defining "Closing Date" and "Outside Date"). The Electronic Trading Platform was deactivated in April 2020. Ex. 2 to Siegel Decl. (docket no. 79-2 at 3).

---

[2] In its Surreply, TPI moves to strike portions of BitGo's Reply, docket no. 86, and the related declaration and exhibits, docket no. 87, as raising new evidence and argument. Mot. to Dismiss Surreply (docket no. 89 at 1–2). The arguments in the Reply are responsive to the arguments raised in TPI's Response, docket no. 78, and the Court DENIES the motion to strike. The evidence raised in BitGo's Reply is responsive to the arguments in TPI's Response and is documents on which the SAC necessarily relies. See Expeditors Int'l of Wash. Inc. v. Cadena Santillana, No. C20-349, 2020 WL 10088717, at *4 (W.D. Wash. Oct. 26, 2020) (citing Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)).

ORDER - 3

1    In April 2021, TPI filed this lawsuit asserting that Defendant iCAP's use of the
2 ICAP Mark infringed on its trademark. See Compl. (docket no. 1). In its SAC, TPI
3 asserts claims against BitGo on the theory that it is a successor-in-interest to Harbor
4 Platform. SAC at ¶¶ 7–8. TPI alleges that BitGo's use of the ICAP Mark "to promote its
5 online platform creation and hosting services is likely to lead to consumer confusion."
6 SAC at ¶ 65.
7    BitGo now moves to dismiss TPI's claims against it based on lack of personal
8 jurisdiction. TPI moves for leave to file supplemental evidence in support of its
9 opposition to BitGo's motion to dismiss. The Court addresses each motion in turn.
10 **Discussion**
11     **I.    Motion for Leave to File Supplemental Evidence**
12    Plaintiff's Motion for Leave to File Supplemental Evidence, docket no. 83, is
13 GRANTED. The Court will consider the Declaration of Joseph Farco and Exhibits A and
14 B attached thereto, docket nos. 84, 84-1, & 84-2, in connection with the Motion to
15 Dismiss. The evidence is admissible and the Court will assess its proper weight when
16 considering it.
17     **II.   Motion to Dismiss**
18    "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction,
19 the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."
20 Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). When the
21 defendant bases its motion on written materials rather than an evidentiary hearing, the
22 plaintiff must make only a prima facie showing of personal jurisdiction. Id. The Court
23

ORDER - 4

must take as true uncontroverted allegations in the complaint and must resolve any conflicts over statements in affidavits in the plaintiff's favor.  Id.

If no applicable federal statute governs personal jurisdiction in the case, the court applies the law of the state in which it sits.  Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).  Washington's long-arm statute "is co-extensive with the outer limits of due process."  Cognigen Networks, Inc. v. Cognigen Corp., 174 F. Supp. 2d 1134, 1137 (W.D. Wash. 2001); RCW 4.28.185.  Accordingly, the Court must ensure that the plaintiff meet only the Constitutional requirements for personal jurisdiction.  Cognigen Networks, Inc., 174 F. Supp. 2d at 1137.

"Under the due process clause, a Court can assert jurisdiction over a non-resident defendant only if it has a threshold level of 'minimum contacts' with the forum state such that 'traditional notions of fair play and substantial justice' are not offended."  Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  A plaintiff can meet this standard by demonstrating that a court has either general or specific jurisdiction over the defendant.  Id.  Here, TPI only makes arguments relating to specific jurisdiction.

The Ninth Circuit has established a three-prong test for analyzing whether specific jurisdiction over a defendant exists:

> (1)   The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)   the claim must be one which arises out of or relates to the defendant's forum-related activities; and

ORDER - 5

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). Under this test, the plaintiff bears the burden of showing that the first two prongs are met. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011). If the plaintiff succeeds, the burden shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–78 (1985)).

Pursuant to the first prong, the parties dispute whether BitGo purposefully directed any activity to Washington. "In trademark infringement actions, a defendant purposefully directs its activities toward the forum state by '(1) committing an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" Philips Oral Healthcare, LLC v. Shenzhen Sincere Mold Tech. Co., Ltd., No. C18-1032, 2019 WL 1572675, at *3 (W.D. Wash. Apr. 11, 2019) (quoting CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1077 (9th Cir. 2011)). BitGo states that TPI cannot satisfy any of the purposeful direction requirements, but does not give any argument as to why the intentional act requirement is not met. Accordingly, the Court assumes, without deciding, that TPI has established the first requirement. Thus, the Court begins by analyzing whether BitGo's actions were expressly aimed at the forum state.

A plaintiff satisfies the second requirement when he or she shows that the defendant's actions, even if taking place outside of Washington, were expressly aimed at

ORDER - 6

Washington.  Rubie's Costume Co., Inc. v. Yiwu Hua Hao Toys, Co., Ltd., No. C18-1530, 2019 WL 4058971, at *3 (W.D. Wash. Aug. 28, 2019) (citing Schwarzenegger, 374 F.3d at 806)).  "[T]his element requires 'something more' than mere foreseeability to justify the assertion of personal jurisdiction." Id. (quoting Brayton v. Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010) abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064 (9th Cir. 2017)).  When determining whether the "something more" requirement is met, the Ninth Circuit has considered various factors, including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the corporation continuously and deliberately exploits the forum state's market for its own commercial gain. Id. (citing Mavrix Photo, Inc., 647 F.3d at 1229–30).

    TPI argues that BitGo expressly aimed its actions at Washington because, through its acquisition of Harbor Tech, BitGo assumed the Software Services Agreement.  TPI, however, fails to cite the Court to any case where the mere acquisition of a company was used to establish personal jurisdiction over another defendant.  The general rule in Washington is that a corporation purchasing the assets of another corporation does not become liable for the liabilities of the selling corporation.  Hall v. Armstrong Cork, Inc., 103 Wn.2d 258, 261, 692 P.2d 787 (1984).

    While recognizing that this is the general rule, TPI contends that an exception applies because BitGo expressly or impliedly agreed to assume liability.  Resp. at 6 (docket no. 78); Hall, 103 Wn.2d at 261–62 (listing exceptions).  To support this contention, TPI states that "it may be inferred from the Contribution Agreement . . . that

ORDER - 7

1    BitGo explicitly and specifically assumed Harbor [Platform's] contract with [Defendant

2    iCAP] . . . to operate the Electronic Trading Platform and all liabilities arising

3    thereunder." Resp. at 6.  The Court, however, will not "assume" anything about BitGo

4    from the Contribution Agreement, as it was not a party to that agreement.  Even so, TPI

5    fails to point to anything in the either Contribution Agreement or any of the contracts that

6    BitGo was a party to that suggests BitGo assumed Harbor Tech's liabilities.

7            TPI also asserts that BitGo's acts were expressly aimed at Washington because

8    "BitGo was operating the Electronic Trading Platform on behalf of a Washington State

9    entity for the purpose of trading investments in Washington State real estate among

10   investors including Washington State residents."[3] Resp. at 8.  The evidence, however,

11   does not support TPI's contention that BitGo ever operated the Electronic Trading

12   Platform.  The Transition Services Agreement between BitGo and Harbor Platform

13   provides that Harbor Platform would continue to carry out the services owed under the

14   Software Services Agreement with Defendant iCap.  Ex. C to Kita Decl. (docket no. 87 at

---

[3] The Court notes that the SAC does not allege that the Electronic Trading Platform was directed at Washington residents. Cf. AirWair Int'l Ltd. v. Schultz, 73 F. Supp. 3d 1225, 1234 (N.D. Cal. 2014) (citing Mavrix Photo, 647 F.3d at 1230) (noting that the Ninth Circuit has found that a California court had specific jurisdiction in case where "defendant sought to exploit the California market," "targeted advertisements to California residents," and "a California viewer base was an 'integral component of defendant's business model and its profitability'"). The only evidence TPI submits regarding Washington residents is a statement from its attorney that he, through unidentified publicly available records, "identified . . . some users of the Electronic Trading Platform as being located in the State of Washington." Siegel Decl. at ¶ 14 (docket no. 79). Though it is unclear how many of the Electronic Trading Platform's users are in Washington or what percentage of total users constitute Washington users, a small percentage of users being Washington residents would undermine the exercise of personal jurisdiction. See Asher Worldwide Enters. LLC v. Sur La Table, Inc., No. C11-1183, 2012 WL 112641, at *5 (W.D. Wash. Jan. 10, 2012) ("[T]he extremely small percentage of sales occurring in this District undermines the exercise of personal jurisdiction over Defendants.").

116) (§ 2.1 stating that Harbor Platform is assigned all ongoing work under the contributed contracts, including the Software Services Agreement).  Although Harbor Platform agreed to perform the services until the earlier of either the completion of the services or 180 days after the closing date, the Electronic Trading Platform was deactivated in April 2020–approximately 70 days after Harbor Platform and BitGo signed the Transition Services Agreement.[4]  Id. at 118; Ex. 2 to Siegel Decl. at 3.

In sum, the evidence demonstrates that BitGo did not assume Harbor Tech's liabilities and did not operate the Electronic Trading Platform.  As such, the only contact BitGo appears to have with Washington is that it acquired Harbor Tech which had in turn acquired the Software Services Agreement between Harbor Platform and Defendant iCap.  But "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." Walden v. Fiore, 571 U.S. 277, 286 (2014) (quoting Burger King Corp., 471 U.S. at 475).  BitGo does not have any place of business or office in Washington and does not own any real or personal property in Washington.  Kita Decl. at ¶¶ 3–4.  These circumstances and the fact that the Electronic Trading Platform was deactivated 70 days after BitGo

---

[4] In its Response, TPI requests that the Court permit jurisdictional discovery if it concludes that it lacks personal jurisdiction over BitGo.  Resp. at 16–18.  Given that the contracts in the record fully develop the parties' relationships, the Court determines that additional discovery is unnecessary.  The key documents are before the Court and no amount of discovery can change the clear language of the contracts.  As such, the Court exercises its discretion to DENY TPI's request for jurisdictional discovery.  See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1160 (9th Cir. 2006) (noting that district courts have discretion in deciding whether to grant a request for jurisdictional discovery).

ORDER - 9

1 acquired Harbor Tech demonstrates the attenuated nature of this contact.[5] TPI fails to point to any action taken by BitGo itself that connects it to Washington in a meaningful way. See Walden, 571 U.S. at 290.

The Court concludes that TPI has failed to establish that BitGo expressly directed its actions at Washington and accordingly does not reach the third requirement of the test for purposeful direction or the other prongs of the test for specific jurisdiction. See Schwarzenegger, 374 F.3d at 802 & 807 n.1. BitGo's Motion to Dismiss, docket no. 69, is GRANTED with prejudice and without leave to amend and BitGo is DISMISSED as a defendant in this action.[6]

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) TPI's Motion for Leave to File Supplemental Evidence, docket no. 83, is GRANTED.

---

[5] The Court's consideration of TPI's supplemental evidence, namely a discovery response by Defendant Hafen LLC ("Hafen") that states BitGo owns the Electronic Trading Platform does not alter the Court's conclusion. See Ex. B to Farco Decl. (docket no. 84-2 at 6) (objecting to a discovery request on the basis that it "calls for information at least equally available to Plaintiff as to Hafen, including relating to the 'Electronic Trading Platform' owned by Defendant BitGo"). TPI does not explain how Hafen would have personal knowledge of who owns the Electronic Trading Platform. The Court determines that BitGo allegedly obtaining ownership of the Electronic Trading Platform for 70 days, while never operating the platform itself, is not sufficient contact with Washington to establish jurisdiction.

[6] In its Motion to Dismiss, BitGo requests that, if the Motion is granted, the Court award reasonable attorney fees under RCW 4.28.185(5). Mot. to Dismiss at 15. The Court exercises its discretion to DENY the request for an attorney fees award in this case. See Hewitt v. Hewitt, 78 Wn. App. 447, 457, 896 P.2d 1312 (1995) (noting that courts have discretion as to whether to award attorney fees under RCW 4.28.185(5)).

ORDER - 10

(2) TPI's Motion to Strike, which it made in its Surreply, docket no. 89, is DENIED.

(3) BitGo's Motion to Dismiss, docket no. 69, is GRANTED with prejudice and without leave to amend. The Court DISMISSES BitGo as a Defendant in this action. BitGo's request for an attorney fees award is DENIED.

(4) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 15th day of February, 2022.

_____
Thomas S. Zilly
United States District Judge